Thank you, Your Honor. May it please the Court. My name is John Cohen. I represent the appellants, Howard Cooper, Jr., Howard Cooper, Sr., and Cooper Engineering. As the Court knows, this case is an advertising injury matter that was submitted based on an underlying claim. The underlying claim was an action, a cross-complaint, that was filed against my clients. That particular action was based on the misappropriation of trade secrets and confidential information, allegedly by the father, Howard Cooper, Sr., when he joined his son after working for 39 years with the underlying claimant, Modern Alloys. That action was then tendered over to the Cooper Engineering insurance carrier, Westchester Insurance, for a defense. That defense was turned down and declined based in part on the failure to fit within the scope of the advertising injury clause. The action was filed for declaratory relief, and essentially where we're at at this point is the analysis of the submission on the fifth cause of action. The fifth cause of action of the underlying claim is essentially a mixed common law and statutory claim for unfair competition. That claim essentially alleges and states that the Coopers had engaged in unfair, deceptive, and misleading advertising, which caused certain damages to Modern Alloys. When the matter was submitted to Westchester, they again denied it based on the additional information that was submitted to them, coming both from that claim and from deposition testimony that was obtained from the president of Modern Alloys during the underlying action. In that underlying action, in the deposition testimony by, his name is Ron Gray, the president and person most knowledgeable designated by Modern Alloys, he claimed that the basis of that cause of action was advertising that he claimed traded on the reputation of Modern Alloys. Again submitted, again declined, and essentially this, the complaint and this appeal followed. The leading key cases that I believe controls this issue is, first of all, the Sentex matter. And this, the causes of action, the facts in this particular case, fit full square within the theory and the facts that were identified by this court in Sentex versus Hartford. In that particular action, the policy language is identical to the policy language that's in the Westchester insurance policies, especially the original policy of 1999, which essentially provides coverage for misappropriation of advertising ideas or style of doing business. In the underlying action, the claims essentially are that the Coopers had misappropriated the reputation of Modern Alloys and exploited that and used that in advertising that was sent out to the market segment that the two competitors and the construction industry competed against, or competed for. What they essentially did is they produced and subcontracted for the erection of concrete barrier wall, barrier wall that was put up in the medians of freeways, in parking structures, in roadways, and there were essentially a variety of different entities that they would contract with and market to. And that essentially was the nature of the claim that was advanced by Modern Alloys, is that the advertising by the Coopers traded on the reputation of Modern Alloys. Ultimately, the claim as it generated was further discovery was initiated and Modern Alloys produced brochures that they claimed represented the advertising that usurped the image and the reputation of Modern Alloys, that there was advertising that was in trade journals, that was in directories, and all these they claimed was essentially the usurpation and the misappropriation of their, essentially their image, their trade dress, their reputation. What happened in the underlying action? Well, the underlying action eventually settled, Your Honor, approximately a year ago. That underlying action, unfortunately, it's subject to a confidentiality clause, but it did not go to trial. It eventually was settled prior to going to trial. It was neither fortunate nor unfortunate. There was an agreement to keep these matters confidential, and the parties are required to observe it, right? To an extent, that is correct. Well, it is correct. That is correct. Well, yes, and I suppose it's a qualified condition in theory if it's subpoenaed. I guess there's the document could be provided if it's under subpoena. But other than that, the standard confidentiality provisions do apply. Well, let's assume that you won. Yes. You can't tell us that you won, but you won. Okay. What's your beef bet against insurance companies? Well, the insurance, the tender was not so much at this level for indemnity. The tender was for a defense. And that is essentially one of the primary functions of having a general liability policy, particularly with the advertising injury provisions in it, is it provides the insured with a defense of a claim. And that is, as cited in our briefs, one of the primary functions of having that policy, not just to be able to indemnify against the judgment, but also to be able to provide coverage. And that was the case. So the case was on your attorney fees? The case is about the attorney's fees of the, on behalf, not just mine, but the attorneys that represented the insurers in the underlying action. That is correct. That is correct. We also believe that, you know, Sentex certainly laid out what is the primary theory, and that is, you know,  when the underlying action concerns misappropriation related to marketing and sales. Here we clearly had the marketing and sales issue four square within the causes of action and the theories. They allege it in the fifth cause of action. They specifically refer to misleading advertising in the underlying action. And they specifically identified in the deposition of Modern Alloy's president that it was a usurpation and an exploitation of Modern Alloy's reputation, all used in the advertising. That falls full square within the concept of advertising ideas, which of course this court in Sentex indicated was a much broader term than simply advertising text, which is what Westchester continued to argue was the standard for advertising injury. In this particular case, it really wasn't that. It was the whole concept of the idea of the manner in which the underlying claimant was marketed, and that is what they are claiming we usurped. I thought the essence of the underlying suit was the contention by Modern that Cooper Sr. had misappropriated confidential trade secrets and other information and was using it to the advantage of his son's business after he left Modern in the competitive bidding process. Do I have that wrong? Well, the court has that correct as to the first three causes of action. Those causes of action essentially indicate that Cooper Sr. had misappropriated, and this is what they describe it, the methods, techniques, pricing, subcontractor and vendor deal points and relationships, owner and contractor economic relationships, et cetera, that they usurp these relationships and ideas. That was the essence of the earlier causes of action. The fifth cause of action doesn't even incorporate the earlier trade secret causes of action. All it does is incorporate the first 18 general allegations and one cause of action for interference with prospective business advantage. It isolates itself to a very separate and unique cause of action, and that is the notion of common law and statutory unfair competition, or as some courts put it, it would be either the trade dress or the passing off common law theory. Did the complaint identify any advertising that the son's business had done after the father came home? No. Actually, the complaint referenced advertising. The answer to my question is no. Not in the complaint. That is correct. We found that out by discovery, discovery in which they produced the brochures and the advertising and the other materials that they claim we used and which constituted the basis for their fifth cause of action. Okay. But, yes, it was not attached to the original complaint. That was determined in discovery. Okay. I think we understand your argument. Why don't we hear from the caregiver at this time, and you can respond if you wish. Counsel? Thank you, Your Honor. Good morning. My name is Heidi Hugo, and I represent Westchester Choir Insurance Company. And as Your Honor is aware, this case has been, or the issues in this case have been briefed and rebriefed and briefed again. Could you keep your voice up a little? Yes. Should I be closer to this one? They don't. Okay. Raise it up. All right. I will try not to repeat all that's in the multiple briefs that have been submitted in this case and are in the record. But, rather, I'd like to step back and look at the big picture. And I think Your Honor already referred to it as the essence of the claim, and I think it can also be referred to as the gravamen of the claim. And it is, in fact, business disputes between arch rivals in the concrete barrier wall construction business. And the claims between those two companies had to do with alleged unfair competition in the competitive bidding process. That is the gravamen of the complaint. And it is not a separate and isolated cause of action in the fifth cause of action. Rather, it's all the same. Not only was the complaint originally focused on that conduct and those allegations, but the record includes a declaration from the insured, testimony of the claimant, and arguments of counsel, all stating that the gravamen of the complaint is this unfair competition in the competitive bidding process. And we know... Do insurance companies have obligations beyond the mere words of the policy? Yes, they do, Your Honor. And, in fact... And what are those duties? Wherever there is a potential for coverage based on the complaint or extrinsic evidence, the duty to defend arises. Here, it did not. Not based on the complaint, and not based upon the evidence that was solicited by counsel for Cooper in the underlying litigation. What came through in that... First of all, I should mention that that deposition of Ronald Grape exceeded 800 pages. And what has been included in the record here are very minor, incomplete snippets from which you can only piece together a fence at puffery. The advertisement that is referenced and highlighted by counsel in that deposition testimony merely said, we're the best. We're the smartest choice. When a company, a small company, sends out a bid along with a whole bunch of other companies to try to get a contract to do the job, isn't that bid a form of advertising? According to Peerless, no. In fact, in Peerless, there were only two companies, and they were soliciting... It doesn't make any difference whether there are 20 companies or two companies. Isn't that one bid by one company a form of advertising? Peerless said no. The court in Peerless said no. Why couldn't that be considered? If you have a duty beyond the terms of the policy, why couldn't that be considered advertising? The court in Peerless looked at that issue, looked at jurisprudence across the country, and said that the meaning of advertising activities within the meaning of the policy is widespread promotional advertising. Well, isn't that promotional when you make a bid? It's certainly promotional. Aren't you promoting your company that you're qualified to do the job? It's certainly promotional, but it's not advertising activities within the meaning of the policy. And only in certain circumstances are one-on-one solicitations considered advertising activity. But in this case, the court said that in the bidding process where you are soliciting a job based upon a tailor-made product for that particular consumer, it is not considered advertising activity. Okay. I think we have your argument in hand. If there's anything else you'd like to speak to us about? I will submit on the other issues, the other issue being that, and I was getting to that, that the advertisement itself does not raise to the level of an advertising injury offense because it is not explicit. It is not ñ it is mere puffery. It isn't ñ there is no misappropriation of an advertising idea or a method of advertising included in that brochure. Okay. Thank you for your argument, Counsel Rebuttal. Thank you, Your Honor. I'd like to respond to the ñ Westchester's argument regarding the peerless matter. Peerless was not even close to the facts of this particular case. Peerless involved one episode stemming from a single solicitation by one bid with one offending sample product. That is not what we have here. We have multiple advertisements sent out in a ñ not just a general advertising circuit or a trade publication, but we also have advertising that went out in mass distribution. Peerless itself commented at footnote 11. It says, We do not foreclose the possibility that under some circumstances solicitation of a single customer might constitute advertising. This might occur, for example, where a supplier prepares and sends flyers to many persons of a single large corporation to solicit business. However, we need not decide that issue in this case. Our holding is limited to the facts before us. And that was a very narrow solicitation. Peerless fell on the fact that it was a single solicitation to a single customer on a single product. We don't have that. We have advertising to a general market segment. And it is Westchester's obligation to prove to the contrary. The only evidence that was ever submitted to the court was that all the evidence that was identified on advertising was mass circulations to contractors, general contractors, subcontractors and owners, and mass circulars and periodicals. All those were identified in the declarations both by the Coopers and in the deposition of the president of Modern Alloys. They were abundantly clear. In this particular instance, the standard is quite obvious. Westchester bears the burden of proving for purposes of a duty to defend that under no conceivable theory would there be even the bare potential of coverage. We have far more than that here. We believe that they at least owed their insurer a duty to defend. Do any of the cases that talk about the difference between bidding and advertising involving companies whose work is only directed towards a very limited segment of society, like in your case, the only work that you do for is the government, and who advertises for the government? Right. Actually, that isn't true, Your Honor. We really do not work directly. We don't bid to the government. These are not Caltrans bidding projects. We were a subcontractor who bids to many general contractors and many owners. So we don't bid directly to Caltrans or to a government entity. So you don't do any, quote, direct advertising to the public? We do. You do? Yes. And actually, that isn't the only standard in the policy. The policy also indicates that the advertising would be also to specific market segments. And in this case, the market segments are the owners and the contractors and the generals and the other subs that we do work for. And that is the market segment that we advertise to. Thank you. Just so I understand, this action is just for the attorney's fees, right? At attorney's fees and costs, the defense obligation on the part of the insurance company. That is correct. At this point, we do not seek indemnity. That was not the scope of the declaratory relief action. It was the duty to defend only. Okay. Thank you for your argument. Thank you, Your Honor. Both counsel for their arguments case just argued will be submitted for decision. And we'll proceed to moot against Global Diamond Resources. If counsel are present, if they could come forward. See if you can get his attention. Could you do me a favor? If there are curtains on that middle window, could you draw them? Thank you. Thank you.
judges: Hug, Ferguson, Hawkins